Baruch C. Cohen, Esq. (SBN 159455)
LAW OFFICE OF BARUCH C. COHEN
    A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501        Fax (323) 937-4503
e-mail: baruchcohen@baruchcohenesq.com

*Attorneys for Plaintiffs Dr. Bruce Taber*
*& Maureen Taber*

> FILED & ENTERED
>
> MAR 05 2019
>
> CLERK U.S. BANKRUPTCY COURT
> Central District of California
> BY Mason    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>CHARLES PERRY COPELAND &<br>ARLENE DIANE COPELAND<br><br>Debtors | Case No. 6:13-bk-25280-SY<br><br>Chapter 7<br><br>Adversary 6:13-ap-01443-SY |
| BRUCE TABER & MAUREEN TABER,<br><br>Plaintiffs<br><br>vs.<br><br>CHARLES PERRY COPELAND &<br>ARLENE DIANE COPELAND,<br><br>Defendants. | **ORDER GRANTING PLAINTIFF'S MOTION TO DEEM ADMISSIONS ADMITTED, TO DEEM DISCOVERY OBJECTIONS WAIVED**<br><br><u>Hearing held:</u><br>Date:  2-20-2019<br>Time: 10:30am<br>Courtroom: 302<br>Place:  3420 Twelfth Street<br>            Riverside CA 92501 |

The hearing on plaintiffs Bruce Taber & Maureen Taber's ("Plaintiffs") Motion to Deem Admissions Admitted, to Deem Discovery Objections Waived (the "Motion") came on for hearing at the referenced time and place before the Honorable Scott H. Yun. Appearing on behalf of Plaintiffs was Baruch Cohen. Appearing on behalf of Charles Perry Copeland & Arlene Diane Copeland ("Defendants") was Bryant Macdonald.

The court having considered the Motion, the opposition, the reply, and the oral arguments at the hearing, the court rules as follows:

**IT IS ORDERED:**

1. Plaintiffs' Motion is GRANTED.

2. Pursuant to Fed.R.Civ.P. 36(a)(3) Plaintiffs' 85 *Requests for Admissions* ("RFAs") that were contained in *Discovery Demands: First Set of Interrogatories, Requests for Production of Documents, & Requests for Admission Propounded by Dr. Bruce & Maureen Taber to Charles Perry Copeland* that were personally served on Defendants on 3-13-2014 at the status conference are deemed ADMITTED.

3. Defendants objections to the 85 RFAs are deemed WAIVED.

4. The following allegations in the Complaint are now deemed ADMITTED:

| Complaint ¶ | Complaint Allegation Now Admitted |
|---|---|
| 6 | Defendants formed their companies with the intention of avoiding personal liability for the financial scheme described in the Complaint. |
| 7.1 | Defendants commingled personal and corporate funds or other assets of COPELAND PROPERTIES EIGHT, LP. |
| 7.1 | Defendants commingled personal and corporate funds or other assets of COPELAND REALTY, INC., n/k/a COPELAND WEALTH MANAGEMENT. |
| 7.2 | Defendants diverted corporate funds or assets to uses other than the benefit of the corporation or the satisfaction of its obligations and debts regarding COPELAND PROPERTIES EIGHT, LP. |
| 7.2 | Defendants diverted corporate funds or assets to uses other than the benefit of the corporation or the satisfaction of its obligations and debts regarding COPELAND REALTY, INC., n/k/a COPELAND WEALTH MANAGEMENT. |
| 7.4 | Defendants failed to maintain separate and adequate corporate records of COPELAND PROPERTIES EIGHT, LP. |
| 7.4 | Defendants failed to maintain separate and adequate corporate records of COPELAND REALTY, INC., n/k/a COPELAND WEALTH MANAGEMENT |
| 7.5 | Defendants failed to capitalize properly COPELAND PROPERTIES EIGHT, LP. |
| 7.5 | Defendants failed to capitalize properly COPELAND REALTY, INC., n/k/a COPELAND WEALTH MANAGEMENT |

| | | |
|---|---|---|
| 1 | 7.6 | Defendants used as a mere shell, instrumentality, or conduit for personal business activities COPELAND PROPERTIES EIGHT, LP. |
| 2 | 7.6 | Defendants used as a mere shell, instrumentality, or conduit for personal business activities COPELAND REALTY, INC., n/k/a COPELAND WEALTH MANAGEMENT |
| 3 | 7.7 | Defendants used as a shield against personal liability or as a subterfuge for illegal transactions COPELAND PROPERTIES EIGHT, LP. |
| 4 | 7.7 | Defendants used as a shield against personal liability or as a subterfuge for illegal transactions COPELAND REALTY, INC., n/k/a COPELAND WEALTH MANAGEMENT |
| 5 | 8 | Defendant is the alter ego of COPELAND PROPERTIES EIGHT, LP. |
| 6 | 8 | Defendant is alter ego of COPELAND REALTY, INC., n/k/a COPELAND WEALTH MANAGEMENT |
| 7 | 11 | Plaintiff DR. BRUCE TABER is not a professional investor. |
| 8 | 11 | Plaintiff DR. BRUCE TABER is not a sophisticated investor and was involved in numerous investment transactions before making the investment referred to in his Complaint |
| 9 | 13 | Plaintiff DR. BRUCE TABER decided to invest in YOUR companies to provide for Plaintiff's retirement |
| 10 | 14 | Defendant "*advised Plaintiff at any time that only the general partner would be liable under all circumstances.*" |
| 11 | 15 | Defendant represented to Plaintiff that as a limited partner of Copeland Limited Partnership, Dr. Taber would not have any financial exposure above his initial $319,097.15 investment if any of Copeland Limited Partnership's investments lost money; that the only risk Plaintiff was taking in this LLC investment was the amount of money he was investing which was $319,097.15. |
| 12 | 15 | Plaintiff "*was not advised later of his exposure before executing the guaranty.*" |
| 13 | 16 | Defendant required that Plaintiff sign multiple documents to become a limited partner of Copeland Limited Partnership. |
| 14 | 16 | "*Plaintiff was only required to execute a Partnership Agreement and a Subscription Contract.*" |
| 15 | 17 | Defendant represented to Plaintiff that all of these documents were regarding Copeland Limited Partnership, that they were "standard" and that they were necessary for PLAINTIFF to sign all of them. |

3

| | | |
|---|---|---|
| 17 | Defendant represented to Plaintiff that "*the original Partnership Agreement and a Subscription Contract as being 'standard' documents.*" |
| 18 | Defendant did not explain the terms of these documents to Plaintiff who did not know that he was agreeing to anything more than becoming a limited partner of Copeland Limited Partnership |
| 18 | Defendant did not "*carefully explain the nature of the Partnership Agreement and a Subscription Contract to Plaintiff.*" |
| 19 | Defendant did not inform Plaintiff that one of the documents tucked away in the pile of documents to be signed regarding Copeland Limited Partnership, was an undated personal guarantee to a loan that Telesis made to Copeland Properties in the amount of $4,256,250.00. |
| 19 | "*When the Personal Guaranty was presented to Plaintiff it was not disclosed to him that he could be responsible personally as a guarantor under certain circumstances.*" |
| 20 | Defendant did not inform Plaintiff that Copeland Limited Partnership had borrowed $4,256,250.00 from Telesis when Dr. Taber became a limited partner |
| 21 | "*Plaintiff was not fully aware of the fact that he had executed a Personal Guaranty to Telesis.*" |
| 23 | Dr. Taber was shocked and appalled to learn of Defendant CHARLES PERRY COPELAND's perfidy. |
| 23 | Dr Taber only agreed to be a limited partner in Copeland Limited Partnership. |
| 23 | Defendant's deceit and manipulation by inserting a personal guarantee in the pile of documents to be signed, Defendant in essence turned Dr. Taber into Copeland Limited Partnership's general partner by guaranteeing this $4,256,250.00 loan |
| 23 | There was no reason for Dr. Taber, as a limited partner of Copeland Limited Partnership, to have guaranteed this $4,256,250.00 loan |
| 23 | If anyone should have given a personal guaranty it should have been Defendant CHARLES PERRY COPELAND, Copeland Limited Partnership's president |
| 24 | Defendant's son Don Copeland had solicited Dr. Taber's investment into Copeland Limited Partnership |
| 26 | Plaintiff asked Defendant why Telesis was claiming that Dr. Taber had signed a personal guarantee of the Loan and was therefore obligated to pay the balance due under the Loan |

4

| | | |
|---|---|---|
| | 26 | Dr. Taber indicated that he had never agreed to sign a personal guarantee of any Loans in connection with this investment and had no knowledge of having done so. |
| | 26 | Defendant admitted that both he and his son Don had not made it clear to Dr. Taber that they were having him sign a personal guarantee of the Loan in connection with his investment in Copeland Limited Partnership and that in retrospect, they probably should have made that clear to him |
| | 26 | Defendant responded by indicating that he thought that the paperwork Plaintiff was being asked by Defendant to sign in connection with this investment was simply the agreements to make the investment in Copeland Limited Partnership |
| | 26 | Defendant was aware of that, and apologized for not making it clear to Dr. Taber that one of the documents he had Plaintiff sign was a personal guarantee of the Loan |
| | 27 | When Defendant made the above representations and material omissions, that he knew them to be false, fraudulent or deceptive, and made them with the intention to deceive and defraud Plaintiffs and to induce Plaintiffs to act in reliance thereon |
| | 28 | At the time the above misrepresentations and material omissions were made, Plaintiffs were ignorant of their falsity and believed them to be true and did, in fact, rely on such fraudulent representations and omissions as evidenced by the fact that they placed their money in Defendants' hands |
| | 29 | Defendants' acts to Plaintiffs were undertaken with intent to defraud, were willful, wanton, malicious and oppressive |
| | 30 | On October 18, 2011, the Securities and Exchange Commission filed a complaint for violations of the federal security laws against Defendants and his alter egos |
| | 30.1 | The SEC's complaint against you alleges that YOU violated Section 17(a) of the Securities Act of 1933 (the "securities Act"), 15 U.S.C. § 77q(a), in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly: (a) to employ any device, scheme, or artifice to defraud; (b) to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser |

5

| | | |
|---|---|---|
| | 30.2 | The SEC's complaint against you alleges that Defendant violated directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security: (a) to employ any device, scheme, or artifice to defraud; (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person |
| | 30.3 | The SEC's complaint against Defendant alleges that Defendant violated Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1) & 80b-6(2), by the use of the mails or any means or instrumentalities of interstate commerce: (a) to employ any device, scheme, or artifice to defraud any client or prospective client; or (b) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client |
| | 30.4 | The SEC's complaint against Defendant alleges that Defendant shall each pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), and Section 209(e)(1) of the Advisers Act, 15 U.S.C. § 80b-9(e)(1) |
| | 31 | On October 18, 2011, Defendant signed a consent that he will be precluded from ever arguing that he did not violate the federal security laws as alleged in the SEC's complaint |
| | 31.1 | Defendant is now permanently restrained and enjoined from violations of Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"_, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80-b-6(1) and 80b-6(2). |
| | 31.2 | Defendant agreed that the Court shall order disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty against each Defendants pursuant to Section 20(d) of the Securities Act [15 U.S.C. §78u(d)(3) and Section 209(e)(1) of the Advisers Act [15 U.S.C. § 80b-9(e)(1)] |

| | | |
|---|---|---|
| 31.3 | | Defendant further agreed that the amounts of disgorgement and civil penalties shall be determined by the Court upon motion of the Commission, and that prejudgment interest shall be calculated from April 1, 2011, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2). Defendants further agree that, in connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendants will be precluded from arguing that they did not violate the federal securities laws as alleged in the Complaint; (b) Defendants may not challenge the validity of this Consent or the Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and 9d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties |
| 31.4 | | Defendant agreed that he shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amounts that any of the Defendants pay pursuant to the Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Defendants further agree that they shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts that Defendants pay pursuant to the Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors |
| 34 | | Plaintiff discovered that - unbeknownst to Plaintiff at the time - that on April 28-29, 2005, Defendant submitted a Commercial Real Estate Loan Application and a Statement of Financial Affairs to Telesis on behalf of Copeland Properties Eight, LP for a $5,456,250 loan, and <u>forged</u> Plaintiff's name on said documents as the applicant, and disclosed Plaintiff's personal and private and confidential financial information and Plaintiff's California driver's license in said documents |
| 34 | | Plaintiff did not authorize the April 28-29, 2005 Commercial Real Estate Loan Application and a Statement of Financial Affairs documents to be sent to Telesis |
| 34 | | Defendant did not inform Plaintiff of the April 28-29, 2005 Commercial Real Estate Loan Application and a Statement of Financial Affairs documents to be sent to Telesis |

| | | |
|---|---|---|
| 1 2 3 | 34 | Plaintiff did not authorize Defendant to send the April 28-29, 2005 Commercial Real Estate Loan Application and a Statement of Financial Affairs documents to Telesis |
| 4 5 | 35 | Plaintiff further discovered that - unbeknownst to Plaintiff at the time - on May 6, 2005, Defendant faxed to Telesis, Plaintiff's personal and private and confidential financial information (including Plaintiff's Charles Schwab statements of account) again |
| 6 7 | 35 | Plaintiff did not authorize Defendant to send Telesis the May 6, 2005 fax containing Plaintiff's personal and private and confidential financial information |
| 8 9 | 35 | Defendant transmitted the May 6, 2005 fax containing Plaintiff's personal and private and confidential financial information to Telesis "as required by Telesis Bank |
| 10 11 12 | 36 | Plaintiff further discovered that - unbeknownst to Plaintiff at the time - on May 6, 2005, Defendant faxed to Telesis, a new Loan Summary identifying Plaintiff as the "guarantor" containing Plaintiff's personal and private and confidential financial information |
| 13 14 | 36 | Plaintiff did not authorize Defendant to send Telesis the May 6, 2005, fax containing a new Loan Summary identifying Plaintiff as the "guarantor" containing Plaintiff's personal and private and confidential financial information |
| 15 16 17 | 36 | Defendant sent Telesis the May 6, 2005, fax containing a new Loan Summary identifying Plaintiff as the "guarantor" containing Plaintiff's personal and private and confidential financial information, "but did not have the consent of the Plaintiff." |
| 18 19 20 | 37 | Plaintiff further discovered that - unbeknownst to Plaintiff at the time - on June 8, 2005, Defendant faxed to Telesis, proof of Plaintiffs' "brokerage statements to support guarantor's claimed liquid assets" containing Plaintiff's personal and private and confidential financial information (including Plaintiff's Charles Schwab statements of account) again |
| 21 22 23 24 | 37 | Plaintiff did not authorize Defendant to send Telesis the June 8, 2005, YOU faxed to Telesis, proof of Plaintiffs' "brokerage statements to support guarantor's claimed liquid assets" containing Plaintiff's personal and private and confidential financial information (including Plaintiff's Charles Schwab statements of account) again |
| 25 26 27 | 37 | Defendant sent Telesis the June 8, 2005, YOU faxed to Telesis, proof of Plaintiffs' "brokerage statements to support guarantor's claimed liquid assets" containing Plaintiff's personal and private and confidential financial information (including Plaintiff's Charles Schwab statements of account), "but did not have the consent of the Plaintiff." |

28

| | | |
|---|---|---|
| | 38 | Plaintiff further discovered that - unbeknownst to Plaintiff at the time - on June 9, 2005, Defendant faxed to Telesis, a new Loan Summary identifying Plaintiff as the "guarantor" of a loan for $4,426,000.00 containing Plaintiff's personal and private and confidential financial information. |
| | 38 | Plaintiff did not authorize Defendant to send Telesis the June 9, 2005 fax to Telesis, containing a new Loan Summary identifying Plaintiff as the "guarantor" of a loan for $4,426,000.00 containing Plaintiff's personal and private and confidential financial information. |
| | 38 | Defendant sent Telesis the June 8, 2005, YOU faxed to Telesis, June 9, 2005 fax to Telesis, containing a new Loan Summary identifying Plaintiff as the "guarantor" of a loan for $4,426,000.00 containing Plaintiff's personal and private and confidential financial information, "but did not have the consent of the Plaintiff." |
| | 39 | Plaintiff further discovered that - unbeknownst to Plaintiff at the time - on June 10, 2005, Defendant faxed to Telesis, a new Loan Summary identifying Plaintiff as the "guarantor" of a loan for $4,258,250.00 containing Plaintiff's personal and private and confidential financial information |
| | 39 | Plaintiff did not authorize Defendant to send to Telesis the June 10, 2005, Defendant faxed to Telesis, a new Loan Summary identifying Plaintiff as the "guarantor" of a loan for $4,258,250.00 containing Plaintiff's personal and private and confidential financial |
| | 39 | Defendant sent Telesis the June 8, 2005, Defendant faxed to Telesis the June 10, 2005, fax to Telesis, containing a new Loan Summary identifying Plaintiff as the "guarantor" of a loan for $4,258,250.00 containing Plaintiff's personal and private and confidential financial, "but did not have the consent of the Plaintiff." |
| | 42 | As a result of Defendant's actions and omissions identified herein, Defendant has received a benefit from Plaintiffs in excess of $4,256,250.00. |
| | 42 | Plaintiff has been damaged in the sum of $4,256,250.00 |
| | 43 | As a result of Defendant's actions/omissions, the Plaintiffs have accordingly been damaged by Defendant in an amount in excess of $4,256,250.00, plus interest, costs and attorneys' fees which continue to accrue. |
| | 43 | Plaintiff has been damaged in the sum of $4,256,250.00 |
| | 46 | Defendant undertook the fraudulent actions/omissions described herein against Plaintiffs while acting in a fiduciary capacity for the Plaintiffs |
| | 46 | The fraudulent actions/omissions described herein against Plaintiffs were undertaken in furtherance of a fraudulent financial scheme to permanently deprive the Plaintiffs and others of their money |

| | | |
|---|---|---|
| 51 | Defendants' actions/omissions described herein against Plaintiffs reflects willful and malicious injury by the debtor to another entity or the property of another entity |
| 57 | Defendants' actions/omissions described herein against Plaintiffs reflects the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and (B) results, before, on, or after the date on which the petition was filed, from (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding; (ii) any settlement agreement entered into by the debtor; or (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor |
| 59 | Defendants' actions/omissions described herein against Plaintiffs reflects more unfair, unlawful or fraudulent business practices |

**IT IS SO ORDERED**.

###

Date: March 5, 2019

Scott H. Yun
United States Bankruptcy Judge