1  Baruch C. Cohen, Esq. (SBN 159455)
   LAW OFFICE OF BARUCH C. COHEN
2      A Professional Law Corporation
   4929 Wilshire Boulevard, Suite 940
3  Los Angeles, California 90010
   (323) 937-4501        Fax (888) 316-6107
4  e-mail: baruchcohen@baruchcohenesq.com

5  *Attorneys For Plaintiffs  Dr. Bruce & Maureen Taber*

6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                    RIVERSIDE COURTHOUSE

11

| In re | Case No. 6:13-bk-25280-SY |
|---|---|
| CHARLES PERRY & ARLENE DIANE COPELAND | Adversary 6:13-ap-01443-SY |
| Debtors. | Before the Honorable Scott H. Yun |
| | Chapter 7 |
| DR. BRUCE & MAUREEN TABER, | **PLAINTIFF'S MOTION FOR CONTEMPT OF COURT FOR DEFENDANTS' FAILURE TO COMPLY WITH ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES [DOC-116]; DECLARATION OF BARUCH COHEN** |
| Plaintiffs. | |
| vs. | |
| CHARLES PERRY & ARLENE DIANE COPELAND | Date: 7-30-2019 |
| Defendants | Time: 2:00pm |
| | Courtroom: 302 |
| | Place: 3420 Twelfth Street, Riverside CA 92501 |

22  TO THE HONORABLE SCOTT H. YUN, UNITED STATES BANKRUPTCY COURT JUDGE,

23  THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

24      **PLEASE TAKE NOTICE**  that on 7-30-2019 at 2:00 pm in the Courtroom of the

25  Honorable Scott H. Yun, United States Bankruptcy Judge, Courtroom 302 located at the United

26  States Bankruptcy Court Central District of California 3420 Twelfth Street, Riverside, CA 92501,

27  this Court will hear ***PLAINTIFF'S MOTION FOR CONTEMPT OF COURT FOR***

28

1  ***DEFENDANTS' FAILURE TO COMPLY WITH ORDER GRANTING PLAINTIFFS'***

2  ***MOTION FOR ATTORNEYS' FEES [DOC-116]*** ("Motion").

3      The *Motion* will be based on this Notice, on the attached Memorandum of Points and

4  Authorities, on all the papers and records on file in this action, and on such oral and documentary

5  evidence as may be presented at the hearing of the *Motion*.

6      Plaintiffs bring this *Motion* pursuant to 11 U.S.C. § 105, FRBP 9014, & 9020, on the

7  grounds that Defendants failed  to comply with this Court's *Order Granting Plaintiffs' Motion for*

8  *Attorneys' Fees ("Order")* [Doc-116].

9      Plaintiffs request that Defendants should be ordered to show cause why they should not be

10  held in civil contempt.

11      Plaintiffs further request $8,500.00 in sanctions be awarded their attorneys' fees, costs,

12  disbursements and punitive damages due to the Debtor's intentional and inexcusable failure

13  to comply with this Court's Order against Defendants.

14      Pursuant to Local Bankruptcy Rule 9013-1, any objection or response to this *Motion* must

15  be stated in writing, filed with the Clerk of the Court and served on Defendant and his counsel no

16  later than fourteen days prior to the hearing. Failure to so state, file and serve any opposition may

17  result in the Court failing to consider the same.

18

19  DATED:      June 20, 2019              LAW OFFICE OF BARUCH C. COHEN, APLC

20                                        /s/ Baruch C. Cohen
                                          Baruch C. Cohen, Esq.
21                                        Attorneys for Plaintiffs
                                               Dr. Bruce & Maureen Taber
22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    MEMORANDUM OF POINTS & AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.    THE DEFENDANTS ARE IN CIVIL CONTEMPT OF THIS COURT'S ORDER AND SHOULD BE HELD LIABLE TO PLAINTIFFS FOR SAME . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2.    AN ORDER TO SHOW CAUSE RE CONTEMPT IS APPROPRIATE . . 7

        3.    SANCTIONS ARE PROPERLY AWARDED TO PLAINTIFFS . . . . . . . 9

        4.    MONEY SANCTIONS ARE PROPERLY AWARDED TO PLAINTIFFS 9

    C.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# **TABLE OF AUTHORITIES**

## CASES

*Adams v. Cal. Dept. of Health Services*, 487 F.3d 684, 688 (9th Cir. 2007) . . . . . . . . . . . . . . . . 9

*All Trac Transp. v. Transp. Alliance Bank*, 306 B.R. 859, 875 (2004) . . . . . . . . . . . . . . . . . . . . 8

*Chambers v. NASCO*, 501 U.S. 32, 45-46 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Dollar Systs. v. Avcar Leasing Sys.*, 890 F.2d 165, 175-76 (9th Cir.1989) . . . . . . . . . . . . . . . . . 9

*Donovan v. Sovereign Security Ltd.*, 726 F.2d 55 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*E.E.O.C. v. Local 638*, 753 F.2d 1172 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Chief Executive Officers Clubs, Inc.*, 359 B.R. 527 (Bankr.S.D.N.Y. 2007) . . . . . . . . . . . . 5

*In re Kalpan Electronics, Inc.*, 58 B.R. 326 (Bankr.E.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . 5, 7

*In re Rainbow Magazine*, 77 F.3d 278 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Leon v. IDX Sys.*, 464 F.3d 951, 959, 961 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

*Nicholas v. Oren*, 457 B.R. 202, 225 (EDNY 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Placid Ref. v. Terrebonne Fuel & Lube*, 108 F.3d 609, 613 (5th Cir. 1997) . . . . . . . . . . . . . . . 8

*Powell v. Ward*, 487 F.Supp. 917 (S.D.N.Y. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Powell v. Ward*, 643 F.2d 924 (2d Cir. 1981) cert. denied, 454 U.S. 832, 70 Led.2d 111 (1981)  . 5

*Reygo Pac. Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir. 1982) . . . . . . . . . . . . . . . 9

*Thompson v. Housing Authority of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986)  . . . . 10

*U.S. v. Asay*, 614 F.2d 655, 659 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*U.S. v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*U.S. v. UMWA*, 330 U.S. 258, 304 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*UMWA v. Bagwell*, 129 L. Ed. 2d 642, 114 S. Ct. 2552, 2561-63 (1994) . . . . . . . . . . . . . . . . . 8

*United States v. Paccione*, 975 F.Supp. 537 (D.Ct.S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . 5, 7

## **STATUTES**

Fed. R. Civ. P. 16(f)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

Federal Rules of Bankruptcy Procedure 9014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Rules of Bankruptcy Procedure 9020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Local Bankruptcy Rule 7016-1(f)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

1

## I.    MEMORANDUM OF POINTS & AUTHORITIES

2

### A.    FACTS

3

4

The requested relief is needed to address Defendants' unrestrained and ongoing violations

of this Court's Orders The facts regarding this Motion are simple.

5

6

On 3-19-2019, this Court issued an *Order Granting Plaintiffs' Motion for Attorneys' Fees*

7

[Doc-116]  awarding total fees of $15,425.00 and costs of $2,118.22 (**$17,543.22**) under Fed. R.

8

Civ. P. 16(f)(c) and Local Bankruptcy Rule 7016-1(f)(3) for Defendants' failure to obey the

Court's scheduling order and participate in preparing a joint pre-trial stipulation as directed.[1]

9

10

The Court further ordered Defendants shall have twenty-eight days from the entry of the

11

Order (**4-17-2019**) to pay the awarded fees and costs to Plaintiffs. In the event Defendants fail to

12

pay the awarded fees and costs, the Court shall enter a Pretrial Order approving *Plaintiffs'*

13

*Amended Unilateral Pretrial Report,* filed on April 7, 2016 at Docket No. 58, as the superseding

14

document controlling trial in this adversary proceeding.

15

On 3-22-2019, 3-27-2019, 4-9-2019, Plaintiffs' counsel, Baruch Cohen, reached out to

16

Defendants' counsel, Bryant MacDonald, to inquire whether Defendants would be complying with

17

the Court's Order.

18

Finally, on 4-16-2019, Mr. MacDonald replied: "*Mr. Copeland communicated to me in an*

19

*e-mail yesterday that he has no ability to pay and no way to pay anyone back if he were to borrow*

20

*the funds. Bryant*."

21

Accordingly, and as Plaintiffs' counsel predicted, Defendants failed to pay the awarded

22

$17,543.22.

23

24

Defendants clearly knew of their court-ordered obligations to pay the awarded $17,543.22

and chose to ignore and violate it.

25

26

27

---

[1] A true and correct copy of this Court's *Order Granting Plaintiffs' Motion for Attorneys' Fees*
[Doc-116]  awarding total fees of $15,425.00 and costs of $2,118.22 (**$17,543.22**) is attached hereto
as Exhibit "1" and incorporated herein by this reference.

28

1    At the 5-23-2019 continued Pretrial Hearing, Defendant Copeland and his attorney

2    acknowledged they knew of their Court-ordered obligations to pay the awarded $17,543.22 and

3    chose to ignore and violate it.

4

5    THE COURT: All right. Good morning to both of you. I have just called 10, instead of all three adversary proceedings because this adversary proceeding is in a different state than the others. Thank you, Mr. Cohen, for submitting the declaration

6    that Debtor and Defendant did not comply with the order for attorney's fees....

7

8    THE COURT: I've given the Defendant an opportunity by paying the attorney fees and costs incurred by the Plaintiff for filing a unilateral pretrial order, to then

9    participate in the pretrial order process. Defendant did not do so....

10

11    MR. COHEN: I might prefer not to have to be burdened with a summary judgment when I have a defaulting Plaintiff. Regarding the motion for attorney's fees that was

12    granted, not a penny was paid....

13

14    MR. COHEN: Going back to the motion for attorney's fees, in conjunction with that, we don't want to just drop the Court's order and let it just sit there. We would also be pursuing a motion for contempt against these Defendants for refusing to

15    comply with the court order on attorney's fees...

16

17    MR. COHEN: And I would probably also suggest a hearing, perhaps an OSC re contempt, against this Debtor. You know, all the talk about how they were willing

18    to pay attorney's fees was all nonsense, because not a penny was paid. And there's an existing court order that has been ignored. And we take the position that, in

19    addition to our judgment, this Defendant should be punished accordingly for contempt of court for not complying with the court order....

20

21    MR. COPELAND: Your Honor, the only reason the fees weren't paid is, we don't have the money to pay it. So, I mean, there's a reason I'm in bankruptcy court. We

22    offered to provide 25-percent of my wages to Mr. Cohen, to start making that payment and to allow him to have an immediate judgment. That was not

23    acceptable. So I'm not defying the Court, I'm trying to do what I can do within my means, so.

24

25    THE COURT: I enter a lot of orders and judgments. Sometimes people comply with it, sometimes people don't. There are other people who are hearing today just

26    like you. They didn't comply with my court orders. It doesn't require bad faith,

27

28

2

1  willful failure to comply with my court orders, to not comply with my orders. My
2  order, you had an opportunity. We had hearings.

3  MR. COPELAND: Your Honor, we're here before the Court. The Court's got to
4  make the decision. In all cases, I don't think my attorney has not tried to deal with
   Mr. Cohen. I think -- I've read the correspondence back and forth. Mr. Cohen
5  thinks he has a very strong upper hand and --

6
7  THE COURT: He does.

8
9  MR. COPELAND: -- and so he is unwilling to negotiate with us. So, we're locked
   in. We will have to go forward with what it is the Court decides to do. I agree, we
10  will attempt to deal with Mr. Cohen best way we can.

11  THE COURT: This is my great frustration with this case and a lot of other cases,
12  including other matters that are before me today. There were plenty of opportunity
   before Mr. Cohen got dealt four aces out of the deck for you to have resolved this.
13  Now you want to resolve this. There are no more cards being issued. Everyone has
   the hand they have. I just don't understand why parties don't want to settle until the
14  last flip of that card. Mr. Cohen, I -- only thing I can tell me Mr. Cohen is, I'm here.
   If you want to file a contempt motion I'll be here. I'll resolve it. I'll decide it. But at
15  the end of the day, you know, it's sort of an exercise in futility whether the
   judgment for nondischargeability is a million or a million plus 17,000. Mr.
16  Copeland doesn't have money, he doesn't have money, but I'll be here if parties
   want to come in here, file these motions, I'll rule on it. I do think, Mr. Cohen,
17  though you and your clients have a very strong hand, if you can just try to make this
   go away with a stipulated judgment, and leave something on the table for Mr.
18  Copeland, that might be the best way to go. It will save your time, your client's
   time, my time, but –...
19

20  MR. COHEN: Understood. You know, the pleas of poverty really fall on deaf ears.
21  We're hearing, my clients are hearing that Mr. Copeland sold his practice. He's
   trying to sell his home. He has access to money. And the fact that the court order
22  for the attorney's fees was ignored, notwithstanding his representation that he's
   broke, again, falls on deaf ears to my client. And it's just layers and layers of
23  misleading statements and incorrect statements.[2]

24  If indeed, Copeland was so broke that he could not pay a penny of the Order, why did

25  Copeland ask Plaintiffs' counsel, Baruch Cohen, for his time sheets showing $14,368.71 in

26  ────────────────────

27      [2] A true and correct copy of the transcript of the 5-23-2019 continued pretrial hearing is
   attached hereto as Exhibit "2" and incorporated herein by this reference.

28

3

1   attorneys' fees and costs? Copeland's charade, gave the impression, that upon showing Mr.

2   Cohen's $14,368.71 in attorneys' fees and costs it would be paid. If indeed he has no money, why

3   did Copeland make a pithy offer of $3,050 to satisfy Plaintiffs' Fee Motion (covering only 6 hours

4   of Plaintiffs' counsel's time) which the Court agreed was inadequate and insulting? Obviously,

5   Copeland has some money, and could have made some payment. But instead, made no payment. [3]

6
    On 12-27-2018, Defendants' counsel wrote Mr. Cohen that "Mr. Copeland is currently
7
    drawing a modest salary preparing tax returns:"
8

9
        "Dear Mr. Cohen: I had the opportunity to review your billings and discuss this
10      matter with my client. I believe your claims for reimbursement of attorney fees in
        the sum of over $14,000 to be excessive. First, you appear to be demanding fees for
11      everything you have done regarding the joint pretrial stipulation even if the work or
        appearance was necessary regardless of any alleged failing of our office. You are
12      even seeking fees for preparing stipulations to continue hearings which you
        requested to be continued because of conflicts with your professional or personal
13      calendar.  Additionally, you are demanding reimbursement of your costs expended
        to obtain court transcripts which was not necessitated by anything our office or Mr.
14      Copeland did. Not once do I recall there ever being a discussion between our
        offices regarding any disagreement over what was represented in court, either by
15      counsel, the parties, or the judge which would have necessitated obtaining
        transcripts of any of the proceedings.You are also demanding over $5,000 for travel
16      time in making two appearances in addition to your actual time spent at the hearing.
        As you will recall the primary issue we have had regarding the pretrial stipulation is
17      a dispute over the issue of whether the Requests for Admissions had been deemed
        admitted. Your office refused to acknowledge that we disputed your contention that
18      the Request had been deemed admitted. At the first pretrial hearing I made that
        point to the court. Judge Yun indicated that I should have filed a unilateral
19      stipulation which we did. Our office has even requested your proposed stipulation
        in Word format so that we could make some proposed changes in order to facilitate
20      the preparation of a joint statement without you having to do any further work in its
        preparation. We have never received it. Now that you have filed a motion to deem
21      the requests admitted that issue will finally be resolved. In reviewing your bills I
        eliminated charges which appear unjustified and reduced those deemed excessive. I
22      have included your expenses related to preparing a unilateral report and even for
        appearing but at a reduced, more reasonable rate. The sum I have arrived at is
23      $3,050 which Mr. Copeland is willing to stipulate to a judgment for so that your
        client can get ahead of the SEC's $14,000,000 judgment. **Mr. Copeland is currently
24      drawing a modest salary preparing tax returns** and this would allow Dr. Tabor to
        recover something by way of a garnishment if he moves before the SEC takes
25      action on its judgment.  Bryant." [Emphasis added]

26
        [3] A true and correct copy of the email chain from 12-9-2018 - 12-21-2018 entitled: "TABER
27  VS COPELAND - M&C RE: BCC'S ATTORNEYS FEES RE PRETRIAL - $14,368.71" is attached
    hereto as Exhibit "3" and incorporated herein by this reference.

28

Copeland's drawing a modest salary (preparing tax returns) means that he is making money, however modest it may be. It is not that same as someone who has "no money." Copeland chose to allocate his income and pay debts as he saw fit, and chose to ignore and violate this Court's order.

As mentioned at the continued pretrial hearing, Plaintiffs are informed that Copeland sold his practice. To whom? How much did Copeland make from the sale? Was it to an insider, like his son, who might be secretly funneling money back to Copeland?

**B.    LEGAL ARGUMENT**

1.    **DEFENDANTS ARE IN CIVIL CONTEMPT OF THIS COURT'S ORDER AND SHOULD BE HELD LIABLE TO PLAINTIFFS FOR SAME**

Civil contempt requires: (1) a lawful order; (2) knowledge of the Order; and (3) noncompliance. *Nicholas v. Oren*, 457 B.R. 202, 225 (EDNY 2011). Defendants cannot reasonably dispute these elements as to their violation of the Court Order.

Based upon the facts and circumstances set forth herein that the Defendants have committed civil contempt due to their inexcusable failure to comply with this Court's Order, Defendants should therefore be held liable to Plaintiffs. FRBP 9014 and 9020; *McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949); *Donovan v. Sovereign Security Ltd.*, 726 F.2d 55 (2d Cir. 1984); *E.E.O.C. v. Local 638*, 753 F.2d 1172 (2d Cir. 1985); *Powell v. Ward*, 643 F.2d 924 (2d Cir. 1981) cert. denied, 454 U.S. 832, 70 Led.2d 111 (1981); *United States v. Paccione*, 975 F.Supp. 537 (D.Ct.S.D.N.Y. 1997); *In re Chief Executive Officers Clubs, Inc.*, 359 B.R. 527 (Bankr.S.D.N.Y. 2007); and *In re Kalpan Electronics, Inc.*, 58 B.R. 326 (Bankr.E.D.N.Y. 1986).

As the Second Circuit clearly set forth in the case of Powell, supra.:

5

1   "It is well settled in this circuit that a party may be held in civil contempt for failure
to comply with an order of the court if the order being enforced is clear and
2   unambiguous, the proof of noncompliance is "clear and convincing" and the
defendants have not 'been reasonably diligent and energetic in attempting to
3   accomplish what was ordered.' Id. at 931."

4   Moreover, "it is not necessary to show that defendants disobeyed the ... orders willfully."

5   *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) (See also: *Donovan v. Sovereign*

6   *Security Ltd.*, supra. and *E.E.O.C. v. Local 638*, supra.).

7

8   Plaintiffs have demonstrated to this Court that this matter satisfies all elements upon which

9   a finding of civil contempt may be predicated. First, the Order is without doubt "clear and

10  unambiguous." The Order clearly sets forth Defendants' obligations, to wit: pay to Plaintiffs  the

11  sum of $17,543.22.  Here, Copeland acknowledged the Order at the continued pretrial hearing, and

12  chose to not pay it.

13  MR. COPELAND: Your Honor, the only reason the fees weren't paid is, we don't
have the money to pay it. So, I mean, there's a reason I'm in bankruptcy court. We
14  offered to provide 25-percent of my wages to Mr. Cohen, to start making that
payment and to allow him to have an immediate judgment. That was not
15  acceptable. So I'm not defying the Court, I'm trying to do what I can do within my
means, so.
16

17  Here Defendants, despite all efforts made by Plaintiffs to gain Defendants' compliance,

18  failed to (timely) pay said sums to Plaintiffs. Defendants did not even pay down the balance by

19  paying their pithy $3,050 to satisfy the Order.

20

21  As Defendants have failed and refused to comply with the Order without justification or

22  excuse, this Court should determine that Defendants are not only in contempt of the Court's Order,

23  but have exercised the utmost in bad faith and enter an Order directing Defendants to immediately

24  comply with the Order of this Court by releasing the sums now due to Plaintiffs , award to

25  Plaintiffs their attorneys' fees, costs and disbursements.

26  Moreover, Defendants should be required to pay punitive damages to Plaintiffs for their

27

28

6

outright and unjustified refusal to comply with the Court's Order. "Sanctions for civil contempt are imposed either to coerce compliance with the Order of the Court or to compensate the complainant for losses sustained for non-compliance." *McComb*, supra. at 191. The purpose for civil contempt sanctions is to accomplish the following goals: "(1) to coerce the contemnor into future compliance with the court's order, and (2) to compensate the complainant for losses resulting from the contemnor's past non-compliance." *U.S. v. Paccione*, supra. At 544.

Additionally,

"[c]ompensatory damages for civil contempt may be awarded based on evidence of actual loss.... Attorneys fees are also recoverable.... Apart from whatever statutory basis that may exist permitting the award of attorneys;' fees, the Second Circuit has held that the complainant may be awarded attorneys' fees incurred as a result of prosecuting the contempt if the violation of the order is found to have been willful.... See generally, *Powell v. Ward*, 487 F.Supp. 917 (S.D.N.Y. 1980) defining "willful" as a volitional act done by one who knows or who should reasonably be aware that his conduct is wrongful. *In re Kalpan Electronics, Inc. , supra. at 338-339.*"

Compensatory sanctions should be employed by a court for the purpose of reimbursing the injured party for its actual damages. *U.S. v. Paccione*, supra. "Moreover, the [compensatory] sanction should correspond at least to some degree with the amount of damages." Id. at 545. In determining the appropriate sanction to impose, a court should consider:

"(1) The character and magnitude of the harm threatened by the continued contumacy, (2) The probable effectiveness of the sanction in bringing about compliance, and (3) The contemnor's financial resources and the consequent seriousness of the sanction's burden.... The ultimate consideration is whether the coercive sanction ... is reasonable in relation to the facts. That determination is left to the sound discretion of the ...court. Id. at 545."

The outright refusal of Defendants to comply with this Court's Order not only arises to the level of "willful" but also to the level of egregious. Defendants have failed and refused, without justification or excuse, to abide by the terms of this Court's Order, which has resulted in Plaintiffs' loss of attorneys' fees, costs and disbursements incurred in the filing of the instant motion and

1   seeking to gain Defendants' compliance. Under the circumstances, Plaintiffs should be awarded

2   not only their compensatory damages but sanctions against the debtor as well.

3

        2.     **AN ORDER TO SHOW CAUSE RE CONTEMPT IS APPROPRIATE**

4

5      A bankruptcy court may issue any order, including a civil contempt order,[4] which is

6   necessary or appropriate to carry out the provisions of the Bankruptcy Code. *Placid Ref. v.*

7   *Terrebonne Fuel & Lube*, 108 F.3d 609, 613 (5th Cir. 1997). The Court has inherent authority to

8   enforce its own orders by civil contempt proceedings. *All Trac Transp. v. Transp. Alliance Bank*,

9   306 B.R. 859, 875 (2004).

10     This Court can also impose sanctions under its inherent power. *Chambers v. NASCO*, 501

11   U.S. 32, 45-46 (1991). "Congress impliedly recognized that bankruptcy courts have the inherent

12   power to sanction that Chambers recognized exists within Article II courts." *In re Rainbow*

13   *Magazine*, 77 F.3d 278 (9th Cir. 1996) (sanctions under the Court's inherent power are permitted if

14   "preceded by a finding of bad faith, or conduct tantamount to bad faith," such as recklessness

15   "combined with an additional factor such as frivolousness, harassment, or an improper purpose");

16   *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001); *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th

17   Cir. 2001).

18

19   *///*

20

---

21      [4] **Civil vs. Criminal Contempt**. The fundamental distinction between criminal and civil

22   contempts is the type of process due for their imposition. *UMWA v. Bagwell*, 129 L. Ed. 2d 642, 114 S. Ct. 2552, 2561-63 (1994). A contempt sanction is considered civil "if it is remedial and for the

23   benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." 114 S. Ct. at 2557. The primary purpose of criminal contempt is to punish past

24   defiance of a court's judicial authority, thereby vindicating the court. *U.S. v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980). Civil contempt is characterized by the court's desire to compel obedience to a

25   court order, or to compensate the contemnor's adversary for the injuries which result from the noncompliance; thus, there are two forms of civil contempt, namely, compensatory and coercive. *U.S.*

26   *v. Asay*, 614 F.2d 655, 659 (9th Cir. 1980). Conduct can amount to both civil and criminal contempt and therefore the same acts may justify a court resorting to coercive and punitive measures. *U.S. v.*

27   *UMWA*, 330 U.S. 258, 304 (1947) (also noting that a fine may be payable to the contemnor's adversary).

28

3.    **SANCTIONS ARE PROPERLY AWARDED TO PLAINTIFFS**

This Court can impose sanctions under its inherent power. *Chambers v. NASCO*, 501 U.S. 32, 45-46 (1991).

> "Congress impliedly recognized that bankruptcy courts have the inherent power to sanction that Chambers recognized exists within Article II courts." *In re Rainbow Magazine*, 77 F.3d 278 (9th Cir. 1996) (sanctions under the Court's inherent power are permitted if "preceded by a finding of bad faith, or conduct tantamount to bad faith," such as recklessness "combined with an additional factor such as frivolousness, harassment, or an improper purpose"); *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001); *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001).

4.    **MONEY SANCTIONS ARE PROPERLY AWARDED TO PLAINTIFFS**

Reasonable attorney's fees and costs against a party and/or his counsel have been awarded under the judiciary's inherent power in a number of circumstances, including where a party: (1) fabricates evidence. *Dollar Systs. v. Avcar Leasing Sys.*, 890 F.2d 165, 175-76 (9th Cir.1989), (losing party's attempt to fabricate a disclosure date revealed bad faith conduct justifying an award of attorneys' fees); (2) intentionally spoliates relevant evidence. *Leon v. IDX Sys.*, 464 F.3d 951, 959, 961 (9th Cir. 2006) (intentionally deleting over 2,000 files from his employer-issued laptop during his lawsuit against employer warranted dismissal of plaintiff's lawsuit and monetary sanctions [attorneys' fees and costs for investigating and litigating spoliation issue]).  Here, Defendants ignored the Order and stonewalled as to it's payment., adding to a long and growing list of Defendants' continued discovery and litigation abuses in this case.

An award of expenses does not require a showing of willfulness or improper intent. Rather, the standard is whether there was substantial justification for the losing party's conduct. *Reygo Pac. Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir. 1982). In this case, there wasn't.

The Court retains broad discretion to control its dockets and in the exercise of that power they may impose sanctions. *Adams v. Cal. Dept. of Health Services*, 487 F.3d 684, 688 (9th Cir.

2007); *Thompson v. Housing Authority of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986). Further, "a court certainly may assess sanctions against counsel who willfully abuse judicial processes." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

In addition to the $14,368.71 already incurred, which Defendants refused to pay, Plaintiffs have incurred an additional 10 hours in preparation of this motion ($5,000.00). Counsel's hourly rate is $500.00 per hour. He anticipates another 2 hours in reviewing Defendants' opposition ($1,000.00), another 2 hours in preparing a Reply ($1,000.00), and another 3 hours for attending the hearing ($1,500.00) totaling **$8,500.00**. Bringing the total attorneys due to **$22,868.71**

Accordingly, monetary sanctions sought by Plaintiffs in connection with this *Motion* should be imposed against Defendants with said amount to be made payable to Plaintiffs' attorney, within ten days.

C.      **CONCLUSION**

For all of the foregoing reasons, the Court should grant Plaintiffs' Motion for Contempt pursuant to 11 U.S.C. § 105 and Federal Rules of Bankruptcy Procedure 9014 and 9020; award to Plaintiffs their attorneys' fees, costs and disbursements, and punitive damages; and grant to Plaintiffs any further relief as to the Court seems appropriate.

DATED:        June 20, 2019              LAW OFFICE OF BARUCH C. COHEN, APLC

                                         /s/ Baruch C. Cohen
                                         Baruch C. Cohen, Esq.
                                         *Attorneys For Plaintiffs*
                                              *Dr. Bruce & Maureen Taber*

10

# DECLARATION OF BARUCH C. COHEN

I, BARUCH C. COHEN, declare and state as follows:

1.  The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2.  I am a member in good standing and eligible to practice before the following courts: California State Supreme Court; United States Court of Appeals - Ninth Circuit; Bankruptcy Appellate Panel; United States District Courts: Central District of California; Eastern District of California; Northern District of California; and Southern District of California.

3.  I am the principal shareholder and President of The Law Office of Baruch C. Cohen, a Professional Law Corporation, located at 4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

4.  I proudly represent *Plaintiffs  Dr. Bruce & Maureen Taber*.

5.  This Declaration is in support of **PLAINTIFF'S MOTION FOR CONTEMPT OF COURT FOR DEFENDANTS' FAILURE TO COMPLY WITH ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES [DOC-116]**

6.  On 3-19-2019, this Court issued an *Order Granting Plaintiffs' Motion for Attorneys' Fees* [Doc-116]  awarding total fees of $15,425.00 and costs of $2,118.22 (**$17,543.22**) under Fed. R. Civ. P. 16(f)(c) and Local Bankruptcy Rule 7016-1(f)(3) for Defendants' failure to obey the Court's scheduling order and participate in preparing a joint pre-trial stipulation as directed.

7.  The Court further ordered that Defendants shall have twenty-eight days from the entry of the order (**4-17-2019**) to pay the awarded fees and costs to Plaintiffs. In the event Defendants fail to pay the awarded fees and costs, the Court shall enter a Pretrial Order

approving *Plaintiffs' Amended Unilateral Pretrial Report,* filed on April 7, 2016 at Docket No. 58, as the superseding document controlling trial in this adversary proceeding.

8.    On 3-22-2019, 3-27-2019, 4-9-2019, I reached out to Defendants' counsel, Bryant MacDonald, to inquire whether Defendants would be complying with the Court's Order.

9.    Finally, on 4-16-2019, Mr. MacDonald replied: "*Mr. Copeland communicated to me in an e-mail yesterday that he has no ability to pay and no way to pay anyone back if he were to borrow the funds. Bryant.*"

10.    Accordingly, and as Plaintiffs' counsel predicted, Defendants failed to pay the awarded $17,543.22.

11.    Defendants clearly knew of their Court-ordered obligations to pay the awarded $17,543.22 and chose to ignore and violate it.

12.    A true and correct copy of this Court's *Order Granting Plaintiffs' Motion for Attorneys' Fees* [Doc-116]  awarding total fees of $15,425.00 and costs of $2,118.22 (**$17,543.22**) is attached hereto as Exhibit "1" and incorporated herein by this reference.

13.    A true and correct copy of the transcript of the 5-23-2019 continued pretrial hearing is attached hereto as Exhibit "2" and incorporated herein by this reference.

14.    A true and correct copy of the email chain from 12-9-2018 - 12-21-2018 entitled: "TABER VS COPELAND - M&C RE: BCC'S ATTORNEYS FEES RE PRETRIAL - $14,368.71" is attached hereto as Exhibit "3" and incorporated herein by this reference.

15.    In addition to the $14,368.71 already incurred, which Defendants refused to pay, Plaintiffs have incurred an additional 10 hours in preparation of this Motion ($5,000.00).  My hourly rate is $500.00 per hour. He anticipates another 2 hours in reviewing Defendants' opposition ($1,000.00), another 2 hours in preparing a Reply ($1,000.00), and another 3

hours for attending the hearing ($1,500.00) totaling **$8,500.00**. Bringing the total attorneys

due to **$22,868.71**

I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed June 20, 2019, at Los Angeles, California.

*/s/ Baruch C. Cohen*

Baruch C. Cohen

# EXHIBIT - 1

**CHAMBERS PREPARED ORDER**

FILED & ENTERED

MAR 19 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Mason      DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| | |
|---|---|
| In re: | Case No.: 6:13-bk-25280-SY |
| CHARLES PERRY COPELAND and ARLENE DIANE COPELAND, | Chapter 7 |
| Debtor(s) | |
| BRUCE TABER and MAUREEN TABER, | Adv. No.: 6:13-ap-01443-SY |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES** |
| v. | |
| CHARLES PERRY COPELAND and ARLENE DIANE COPELAND, | <u>Hearing</u><br>Date: March 21, 2019<br>Time: 9:30 a.m.<br>Place: Courtroom 302 |
| Defendants. | |

An initial hearing was held on February 20, 2019 at 10:30 a.m. at 3420 Twelfth Street, Riverside, CA 92501, before the Honorable Scott H. Yun, United States Bankruptcy Judge, on Plaintiffs' Motion for Attorneys' Fees ("Motion").  Appearances were made as reflected on the record. At the hearing, the court indicated that it was inclined to award attorneys' fees in the amount of $6,425.00 and costs in the amount of $1,205.99 under Fed. R. Civ. P. 16(f) and Local Bankruptcy Rule 7016-1(f)(3) for defendants' failure to obey the court's scheduling order and

participate in preparing a joint pre-trial stipulation as directed. The court then continued this matter to the above-captioned date and time as a holding date and set a briefing schedule for plaintiffs to present evidence of the additional fees and costs they incurred in bringing the Motion, and for defendants to object to those fees. Plaintiffs filed their supplemental evidence on February 28, 2019, and defendants filed their response on March 8, 2019.

Having considered the supplemental pleadings of the parties, the court has determined that some of the requested fees and expenses are unrelated to the Motion itself, unreasonable, or excessive. Specifically, the following entries are disallowed:

| 2/8/19 | 1.00 hour @ $500/hr for excessive time to review the opposition. |
| 2/20/19 – 2/27/19 | 1.55 hours @ $500/hr for settlement discussions |
| 2/28/19 | 1.25 hours @ $500/hr for excessive time in preparing a supplemental declaration. |

Having considered the Motion and the initial pleadings, the supplemental pleadings and evidence, and the complete record in this case, and good cause appearing,

IT IS ORDERED that the Motion is granted and plaintiffs are awarded total fees of $15,425.00 and costs of $2,118.22 under Fed. R. Civ. P. 16(f) and Local Bankruptcy Rule 7016-1(f)(3) for defendants' failure to obey the court's scheduling order and participate in preparing a joint pre-trial stipulation as directed.

IT IS FURTHER ORDERED that defendants shall have twenty-eight days from the entry of this order to pay the awarded fees and costs to plaintiffs. In the event that defendants fail to pay the awarded fees and costs, the court shall enter a pre-trial order approving the Plaintiffs' Amended Unilateral Pretrial Report, filed on April 7, 2016 at Docket No. 58, as the superseding document controlling trial in this adversary proceeding.

///

///

///

Case 6:13-ap-01443-SY    Doc 116    Filed 03/19/19    Entered 03/19/19 11:24:38    Desc
Main Document      Page 3 of 3

1        IT IS FURTHER ORDERED that the continued hearing on March 21, 2019 @ 9:30 a.m. is

2    vacated.

3                             ###

Date: March 19, 2019

Scott H. Yun
United States Bankruptcy Judge

# EXHIBIT - 2

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

--oOo--

In Re:                              ) Case No. 6:13-bk-25280-SY
                                    )
CHARLES PERRY COPELAND,             ) Chapter 7
                                    )
          Debtor.                   ) Riverside, California
_____     ) Thursday, May 23, 2019
                                    ) 9:30 a.m.
TABER, ET AL.,                      )
                                    ) Adv. No. 6:13-ap-01443-SY
          Plaintiffs,               )
                                    )
      vs.                           )
                                    )
COPELAND, ET AL.,                   )
                                    )
          Defendants.               )
_____     )

                            CONT'D PRE-TRIAL CONFERENCE
                            RE: COMPLAINT TO DETERMINE
                            NONDISCHARGEABILITY OF DEBT
                            UNDER 11 U.S.C. SECTION
                            523(a)(2)(A), (a)(6), (a)(19)


                    TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE SCOTT YUN
                UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Plaintiffs:         BARUCH C. COHEN, ESQ.
                            Law Office of Baruch C. Cohen,
                              APLC
                            4929 Wilshire Boulevard
                            Suite 940
                            Los Angeles, California 90010
                            (323) 937-4501


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

ii

1 | APPEARANCES:  (cont'd.)

2 | For the Debtor/Defendant:        BRYANT C. MACDONALD, ESQ.
                                      300 East State Street
3 |                                   Suite 450
                                      Redlands, California 92373
4 |                                   (909) 793-7995

5 | Court Recorder:                   Shari Mason
                                      United States Bankruptcy Court
6 |                                   3420 Twelfth Street
                                      Riverside, California 92501

7 |

8 | Transcriber:                      Briggs Reporting Company, Inc.
                                      2160 Fletcher Parkway
9 |                                   Suite P
                                      El Cajon, California 92020
10 |                                  (310) 410-4151

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

1

1    RIVERSIDE, CALIFORNIA  THURSDAY, MAY 23, 2019  9:30 AM

2                         --oOo--

3    (Call to order of the Court.)

4         THE COURT:  Let's call number 10, Charles

5    Copeland.  This is the Taber et al vs. Copeland et al

6    adversary proceeding.  And this is just number 10 for now.

7         Appearances, please.

8         MR. COHEN:  Good morning, your Honor.  Baruch

9    Cohen representing the Plaintiffs.

10        MR. MACDONALD:  Good morning, your Honor.  Bryant

11   MacDonald representing the Debtors.

12        THE COURT:  All right.  Good morning to both of

13   you.  I have just called 10, instead of all three adversary

14   proceedings because this adversary proceeding is in a

15   different state than the others.

16        Thank you, Mr. Cohen, for submitting the

17   declaration that Debtor and Defendant did not comply with

18   the order for attorney's fees.  So now we're at a state

19   where, pursuant to a motion, request for admissions have

20   been deemed admitted --

21        MR. COHEN:  Correct.

22        THE COURT:  -- or at a point where the Plaintiff's

23   unilateral pretrial order is going to be the pretrial order,

24   because the Defendant did not timely submit -- participate

25   in submitting a joint pretrial order.

*Briggs Reporting Company, Inc.*

2

1        I've given the Defendant an opportunity by paying

2   the attorney fees and costs incurred by the Plaintiff for

3   filing a unilateral pretrial order, to then participate in

4   the pretrial order process.  Defendant did not do so.

5        So, Mr. Cohen, this case has been going on for a

6   while.  Did I enter an order approving your client's

7   unilateral pretrial?

8            MR. COHEN:  Not yet, your Honor.

9            THE COURT:  All right.  If you could --

10           MR. COHEN:  You said you would do it at the

11  pretrial hearing.

12           THE COURT:  If you can prepare and lodge an order

13  approving your client's unilateral pretrial order.

14       So, this is what I'm inclined to do.  I'm inclined

15  to pick a trial date, just so that we keep moving forward,

16  but, Mr. Cohen, I think you have a lot of options.  Request

17  for admissions are deemed admitted.

18       Once I enter an order approving the Plaintiff's

19  unilateral pretrial order, I'm not really sure we need a

20  trial, or if it's a trial, it would be a 10-minute trial, or

21  you just stand up and ask that all of the admitted facts and

22  issues of law be accepted and taken into evidence, and the

23  trial will be over.

24       So, Mr. Cohen, how would you like to proceed?

25           MR. COHEN:  Exactly as your Honor indicated.  If

3

1  your Court's trial date is sufficiently far out, in terms of

2  your first available date, I have summary judgment options.

3          THE COURT:  Uh-huh.

4          MR. COHEN:  I might prefer not to have to be

5  burdened with a summary judgment when I have a defaulting

6  Plaintiff.

7          Regarding the motion for attorney's fees that was

8  granted, not a penny was paid.  And I believe that there's a

9  doctrine called, "the doctrine of disentitlement," that

10 supports the notion that when a party does not honor and

11 violates a court order, it loses and forfeits the right to

12 participate in the litigation process thereafter.

13         So, in essence, at this point, I would have an

14 unopposed summary judgment motion, because we would assert

15 the doctrine of disentitlement to preclude the Defendant

16 from litigating his innocence at trial, even though we have

17 admissions of fact.

18         We also have, in addition we have, you know, as

19 the Court acknowledged, the deemed admissions.  As I

20 indicated in a prior hearing, life support for this

21 Defendant is basically over.

22         Going back to the motion for attorney's fees, in

23 conjunction with that, we don't want to just drop the

24 Court's order and let it just sit there.  We would also be

25 pursuing a motion for contempt against these Defendants for

4

1 refusing to comply with the court order on attorney's fees.

2          So, my next step is sort of predicated on the

3 Court's schedule.  If the next available trial date is too

4 far in the future, I might just consider a motion for

5 summary judgment, unless you could give me an earlier court

6 date.

7          And I would probably also suggest a hearing,

8 perhaps an OSC re contempt, against this Debtor.  You know,

9 all the talk about how they were willing to pay attorney's

10 fees was all nonsense, because not a penny was paid.  And

11 there's an existing court order that has been ignored.

12         And we take the position that, in addition to our

13 judgment, this Defendant should be punished accordingly for

14 contempt of court for not complying with the court order.

15         So I would like to know when your first available

16 trial date is, so that we can then discuss my options

17 further.

18         THE COURT:  Sure.  Before I do that, I want to

19 hear from Mr. MacDonald.

20         Mr. MacDonald, your client settled one adversary

21 proceeding, I think the Cohut (phonetic) proceeding.  That

22 got resolved at mediation.  Initially, there were four of

23 these adversary proceedings.  One of them did get settled.

24 I think the plaintiff was Cohut was the last name?

25         MR. MACDONALD:  Cohut and -- that's pricking my

5

1   memory of something that happened almost four years ago.

2          THE COURT:  Yeah.

3          MR. MACDONALD:  I don't recall any of the details.

4   But I believe the Plaintiffs, quite frankly, just believed

5   that there wasn't going to be anything that they were going

6   to satisfy the judgment out of in relationship to the SEC.

7   I don't believe it was mediated, per se, but I'm not going

8   to swear to that.  Such a long time.

9          THE COURT:  So, at this point, Mr. MacDonald, what

10  is Mr. Copeland going to do?  At least with respect to this

11  adversary proceeding, I think we all know how it's going to

12  end.  There's going to be a judgment entered against him one

13  way or another.  We can do it the easy way or we can do it a

14  hard way, we can do it a harder way.

15         Maybe there's an opportunity here if Mr. Copeland

16  is willing to face with this deck of hands, agree to

17  stipulate to a judgment to save mister -- Doctor Taber and

18  his wife additional attorney's fees.  Maybe Mr. Cohen is not

19  going to ask for an enforcement of the attorney's fees order

20  or a contempt.  Okay.

21         So, I want to know how Mr. Copeland would like to

22  proceed.

23         MR. MACDONALD:  I would concur with the Court's

24  general summation of the situation, and to a certain degree,

25  with Mr. Cohen.  I believe a stipulation or some agreement

6

1  is best to work something out, rather than compelling Mr.

2  Cohen to file a motion for summary judgment, or even having

3  to make any appearance at a trial.

4          Mr. Copeland, do you want to step up for a second?

5          MR. COPELAND:  Sure.

6          MR. MACDONALD:  I want to just point out a couple

7  of things.  The order of the Court basically provided, as I

8  understand, that the monies were to paid.  And in the event

9  they were not paid, the sanctions would be that the

10 unilateral pretrial stipulation would be accepted by the

11 Court.

12         It has in its body already the sanction element,

13 providing now that it would be, particularly when involving

14 the payment of money, a violation -- basically, an order to

15 show cause for contempt, I think would be adding additional

16 elements to the Court's order, which wasn't really included

17 previously.

18         The only other thing I would add is that the

19 amount to be paid was 17,000 and change, I mean about

20 17,500.  It wasn't 1,000, 2,000 or 3,000.  So, in light of

21 the fact that a demand was made upon us.  Here's my wire

22 information or my bank account.  When will your client be

23 forwarding the $17,000?  It doesn't make sense to, at this

24 stage, say, well, we're going to send you $2,000.

25         Mr. Copeland did offer to provide at this point in

7

1  time a -- basically 25-percent of his wages, some kind of a

2  payment plan, but that wasn't acceptable.  But, anyway.

3         And getting back to the issue of, let's see if we

4  can cut this thing off at its, at this point.  I'd ask Mr.

5  Copeland in terms of --

6         MR. COPELAND:  Your Honor, the only reason the

7  fees weren't paid is, we don't have the money to pay it.

8  So, I mean, there's a reason I'm in bankruptcy court.

9         We offered to provide 25-percent of my wages to

10  Mr. Cohen, to start making that payment and to allow him to

11  have an immediate judgment.  That was not acceptable.  So

12  I'm not defying the Court, I'm trying to do what I can do

13  within my means, so.

14         THE COURT:  I enter a lot of orders and judgments.

15  Sometimes people comply with it, sometimes people don't.

16  There are other people who are hearing today just like you.

17  They didn't comply with my court orders.

18         It doesn't require bad faith, willful failure to

19  comply with my court orders, to not comply with my orders.

20  My order, you had an opportunity.  We had hearings.

21         MR. COPELAND:  I understand, your Honor.  I'm not

22  -- if you want a single judgment against them, that's fine.

23  My wife doesn't even know the Tabers.  She's brought into

24  this just because she's in the bankruptcy court.

25         If there's a judgment with just me for the full

8

1  amount that the Tabers want, that's fine.  The SEC and --

2  I'm either going to pay the SEC or I'm going to pay the

3  Tabers.  If the Tabers get there first, then they'll be able

4  to get the judgment for as long as I can work.

5         Once I can't work, it's just social security, and

6  nobody's going to get their full amount of pay.

7         THE COURT:  Here's what I'm going to do.  I'm

8  going to give a trial date.  Based on that trial date, Mr.

9  Cohen is going to decide whether or not he wants to just

10 wait for the trial date or file a motion for summary

11 judgment.

12        In between, in that time period, Mr. MacDonald,

13 Mr. Copeland, please talk to Mr. Cohen and the Tabers to try

14 to resolve this.  If not, we're just going to keep moving

15 forward.

16        I don't know whether or not I'm going to issue a

17 contempt order.  We'll see.  I just want to give parties a

18 lot of options to try to resolve this.  And at the end of

19 the day, one of the things that could keep happening is, if,

20 in addition to contempt -- you know, was it 727(d)(3),

21 failure to comply with court order means discharge is

22 revoked.

23        So, it's not just with respect to the Tabers or

24 the parties that filed adversary proceedings, your entirety

25 of your discharge could be revoked.  Failure to comply with

9

1  court order.

2        MR. COPELAND:  Your Honor, we're here before the

3  Court.  The Court's got to make the decision.  In all cases,

4  I don't think my attorney has not tried to deal with Mr.

5  Cohen.  I think -- I've read the correspondence back and

6  forth.  Mr. Cohen thinks he has a very strong upper hand

7  and --

8        THE COURT:  He does.

9        MR. COPELAND:  -- and so he is unwilling to

10 negotiate with us.

11       So, we're locked in.  We will have to go forward

12 with what it is the Court decides to do.  I agree, we will

13 attempt to deal with Mr. Cohen best way we can.

14       THE COURT:  This is my great frustration with this

15 case and a lot of other cases, including other matters that

16 are before me today.  There were plenty of opportunity

17 before Mr. Cohen got dealt four aces out of the deck for you

18 to have resolved this.  Now you want to resolve this.  There

19 are no more cards being issued.  Everyone has the hand they

20 have.  I just don't understand why parties don't want to

21 settle until the last flip of that card.

22       Mr. Cohen, I -- only thing I can tell me Mr. Cohen

23 is, I'm here.  If you want to file a contempt motion I'll be

24 here.  I'll resolve it.  I'll decide it.  But at the end of

25 the day, you know, it's sort of an exercise in futility

10

1  whether the judgment for nondischargeability is a million or

2  a million plus 17,000.  Mr. Copeland doesn't have money, he

3  doesn't have money, but I'll be here if parties want to come

4  in here, file these motions, I'll rule on it.

5         I do think, Mr. Cohen, though you and your clients

6  have a very strong hand, if you can just try to make this go

7  away with a stipulated judgment, and leave something on the

8  table for Mr. Copeland, that might be the best way to go.

9  It will save your time, your client's time, my time, but --

10        MR. MACDONALD:  Your Honor, I would suggest we put

11 this matter out far enough.  I intend to have a long

12 discussion with Mr. Copeland regarding this matter.

13        THE COURT:  Uh-huh.

14        MR. MACDONALD:  It would be my intent to do

15 exactly that, at this point to work out a stipulation.  And

16 so that no further time has to be taken up by this Court.

17 And I think that Mr. Copeland has indicated that he's

18 willing to cooperate in that regard.

19        THE COURT:  So --

20        MR. COPELAND:  May I ask a question, your Honor?

21        THE COURT:  Go ahead, Mr. Copeland.

22        MR. COPELAND:  You said if we go forward it will

23 completely dismiss the bankruptcy against me?

24        THE COURT:  That's one of the ways this can end.

25 Not dismiss the case, but your discharge could be revoked.

11

1  Instead of having individual judgments where certain debts

2  are not dischargeable, your entire discharge could be

3  revoked.  That is one --

4          MR. COPELAND:  Which would be all the people who

5  filed previously, the creditors and so on?

6          THE COURT:  Everybody.  Not just the ones you get

7  judgments against.

8          MR. COPELAND:  And so would they all stand in the

9  same line for trying to collect from me?

10         THE COURT:  Potentially -- well, it depends.

11 Whoever gets to you first --

12         MR. COPELAND:  Okay.  Can I unilaterally to do

13 that?

14         THE COURT:  -- gets to you first.  Not while

15 you're in bankruptcy.  Once this case is dismissed you can.

16         MR. MACDONALD:  Let me -- let's have a discussion.

17         MR. COPELAND:  Yeah.  Okay.

18         THE COURT:  Mr. Cohen, I know you observe the

19 holidays, Jewish holidays.  I have October 29th as a

20 potential trial date for you.  Is that sufficiently far out

21 for all of the --

22         MR. COHEN:  This is one of those moments I need

23 the Jewish calendar.

24         THE COURT:  I'm glad you have one.

25         MR. COHEN:  I live off this calendar, because I

12

1  have many Jewish holidays.   Okay.   October --

2          THE COURT:   Twenty-ninth.

3          MR. COHEN:   -- twenty-ninth is after the Jewish

4  holidays end.   I was sort of kind of hoping for a trial date

5  immediately because I don't really need an extension.   I

6  don't need any time.

7          THE COURT:   Right.

8          MR. COHEN:   The admissions are deemed admitted,

9  and Mr. MacDonald does not need months to speak to Mr.

10 Copeland.   He's here.   They could go into the lobby and give

11 me an answer right now.

12         THE COURT:   It's --

13         MR. COHEN:   Is there an earlier date that you can

14 give me?

15         THE COURT:   So right around this time of the year

16 is when we have a lot of judicial conferences, and I have

17 three kids.   So my availability and timing for long matters,

18 like potential trials, becomes scarce.

19         MR. COHEN:   I'll take it.

20         THE COURT:   So, we'll have a trial set on this

21 matter October 29th, 2019 at 9:30 a.m.   And I suspect it

22 will be a very short trial.

23         MR. COHEN:   We are -- my clients are not

24 interested in shaving off Mrs. Copeland from this case.

25 They're both Defendants.   They're both liable.

13

1        In terms of what Mr. Copeland said in his pleas at

2    this late date, as this Court indicated, that ship has

3    sailed a long time ago.  And the level of perfidy and the

4    level of betrayal of Mr. Copeland to my clients and other

5    Copeland defendants are so intense right now, the only thing

6    I could analogize it is,  watching the sentencing hearing of

7    a Bernie Madoff, when you hear the ire and the anxiety and

8    the pain that people's life savings were totally squandered

9    by this man.

10        At this point they're not interested in

11   accommodating.  The only offer that's on the table will be

12   stipulate to a complete judgment, and then we will consider

13   whether we will pursue the contempt or not.  That's the only

14   offer that's on the table.

15        THE COURT:  All right.  So, we have a trial date

16   set for this matter, October 29th at 9:30 a.m.  All of my

17   trial procedure requirements are waived.

18        MR. COHEN:  Sure.

19        THE COURT:  Just please lodge an order approving

20   your unilateral pretrial order.  Please indicate in the

21   order that October 29, 2019 at 9:30 a.m. will be the trial

22   date.  And also add another sentence in there that my trial

23   procedures are waived --

24        MR. COHEN:  Will do.

25        THE COURT:  --  because the unique status of this

14

1  adversary proceeding.

2          But I know, Mr. Cohen, your clients are in a very

3  strong position, but please do consider that if Mr. Copeland

4  is willing to enter a stipulated judgment, to forgive or

5  walk away from the $17,000 attorney's order, attorney's fees

6  order, and then we can just move on.  And I think, I think

7  you understand this.

8          In some ways 727(d)(3) is a powerful weapon, but I

9  think Mr. Copeland sort of alluded to this, you don't want

10 everyone to be able to pursue Mr. Copeland, to the extent

11 that Mr. Copeland for the rest of his life, working life,

12 has some money to pay certain creditors, it might be better

13 if your client has a nondischargeable judgment, rather than

14 his entire discharge be revoked, which means everyone, after

15 all of the works that the Tabers have done to get to this

16 point, they're in the same position as all of the other

17 creditors of Mr. Copeland.

18         MR. COHEN:  Understood.  You know, the pleas of

19 poverty really fall on deaf ears.  We're hearing, my clients

20 are hearing that Mr. Copeland sold his practice.  He's

21 trying to sell his home.  He has access to money.  And the

22 fact that the court order for the attorney's fees was

23 ignored, notwithstanding his representation that he's broke,

24 again, falls on deaf ears to my client.  And it's just

25 layers and layers of misleading statements and incorrect

*Briggs Reporting Company, Inc.*

15

1  statements.  So, I'll speak to my clients and see what they

2  want.

3          THE COURT:  Great.

4          MR. COHEN:  But in the meantime, I don't want Mr.

5  MacDonald to wait until the eve of trial to make this offer,

6  because by a certain date the doors of negotiations are

7  going be closed.

8          THE COURT:  All right.  Is there anything else for

9  number 10, Mr. MacDonald?

10          MR. MACDONALD:  That, I understand that, and we'll

11  be working very vigorously on this matter.

12          THE COURT:  Great.  Thank you.

13          MR. COHEN:  Thank you.

14          MR. MACDONALD:  And we appreciate the opening

15  statement, too.

16          THE COURT:  Thank you.

17      (Proceedings concluded.)

18

19

20          I certify that the foregoing is a correct

21  transcript from the electronic sound recording of the

22  proceedings in the above-entitled matter.

23

24  /s/ Holly Steinhauer          5-30-19
   Transcriber                   Date

25

*Briggs Reporting Company, Inc.*

# EXHIBIT - 3

6/20/2019      LAW OFFICE OF BARUCH C. COHEN, APLC Mail - TABER VS COPELAND - M&C RE: BCC'S ATTORNEYS FEES RE PRETRIAL - $1...



**BARUCH COHEN <baruchcohen@baruchcohenesq.com>**

## TABER VS COPELAND - M&C RE: BCC'S ATTORNEYS FEES RE PRETRIAL - $14,368.71 i

10 messages

**Baruch Cohen** <baruchcohen@baruchcohenesq.com>      Sun, Dec 9, 2018 at 1:37 PM
Reply-To: bcc@baruchcohenesq.com
To: Maclaw51@verizon.net

Counsel:

- Recall, that at the 12-6-2018 continued pretrial, the Court made it very clear that the only way Copeland gets to participate in the pretrial process, is if my attorneys fees are paid by either motion or stipulation with Copeland paying them without a motion. Copeland does not get a 2nd (or 3rd and 4th) chance to participate in the process, unless my fees & costs are reimbursed. There must be consequences to Copeland's defaults.
- This letter serves as my meet & confer regarding Plaintiff's attorneys fees regarding the Pre-Trial.
- As of 5-26-2015, I incurred approximately 24.75 hours at my billing rate of $500.00 an hour totaling $12,375.00 and $1,993.71 in fees and costs totaling $14,368.71 to comply with the Court's pre-trial requirements.
- Please remit $14,368.71 to me by Friday 12-14-2018, or I will file the attorney's fees motion, which will only increase Copeland's costs to participate in the pretrial.
- Please deposit **$14,368.71** into my Wells Fargo Bank Account #: 3819001557, Routing #: 122000247, and email me proof of the deposit by Friday 12-14-2018.

BCC

---
Baruch C. Cohen, Esq.
Law Office of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, CA 90010
Office (323) 937-4501 | Cell (323) 353-9535
Facsimile: (323) 937-4503
Email: bcc@baruchcohenesq.com
www.BaruchCohenEsq.com
***Notice of Ex Parte Hearings Will Not Be Accepted by Email***
American Trial Attorneys in Defense of Israel



**2013, 2015, 2016, 2017, 2018 & 2019** *Super Lawyers® is a registered trademark of Thomson Reuters*

This e-mail is covered by the Electronic Communications Privacy Act 18 U.S.C. 2510-2521 and is legally privileged. It is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail and destroy this communication.



Sender notified by
Mailtrack

**Baruch Cohen** <baruchcohen@baruchcohenesq.com>                    Sun, Dec 9, 2018 at 1:38 PM
Reply-To: bcc@baruchcohenesq.com

[Quoted text hidden]

✓✓  Sender notified by
     Mailtrack

---

**Macdonald Bryant** <maclaw51@verizon.net>                    Mon, Dec 10, 2018 at 6:33 PM
To: bcc@baruchcohenesq.com

In regards to your demand for over $14,000 in fees and costs incurred in complying "with the Court's pretrial requirements" could you kindly provide a breakdown of those fees and costs providing some documentation as to how they are related to complying with the Court's pretrial requirements.

-----Original Message-----
From: Baruch Cohen <baruchcohen@baruchcohenesq.com>
To: Maclaw51 <Maclaw51@verizon.net>
Sent: Sun, Dec 9, 2018 10:38 am
Subject: TABER VS COPELAND - M&C RE: BCC'S ATTORNEYS FEES RE PRETRIAL - $14,368.71 i

[Quoted text hidden]

---

**Baruch Cohen** <baruchcohen@baruchcohenesq.com>                    Mon, Dec 10, 2018 at 6:52 PM
Reply-To: bcc@baruchcohenesq.com
To: maclaw51@verizon.net
Cc: BARUCH COHEN <bcc@baruchcohenesq.com>

Heres' the timesheets which gives you the breakdown and documentation

---
Baruch C. Cohen, Esq.
Law Office of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, CA 90010
Office (323) 937-4501 | Cell (323) 353-9535
Facsimile: (323) 937-4503
Email: bcc@baruchcohenesq.com
www.BaruchCohenEsq.com
***Notice of Ex Parte Hearings Will Not Be Accepted by Email***
 American Trial Attorneys in Defense of Israel

[in] [tw] [fb] [g+]

**Super Lawyers**

**2013, 2015, 2016, 2017, 2018 & 2019** *Super Lawyers® is a registered trademark of Thomson Reuters*
This e-mail is covered by the Electronic Communications Privacy Act 18 U.S.C. 2510-2521 and is legally privileged. It is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail and destroy this communication.

6/20/2019          LAW OFFICE OF BARUCH C. COHEN, APLC Mail - TABER VS COPELAND - M&C RE: BCC'S ATTORNEYS FEES RE PRETRIAL - $1...

 Sender notified by
Mailtrack

[Quoted text hidden]

📄 **TABER - COPELAND - BCC'S FEES REGARDING PRETRIAL.pdf**
126K

---

**Macdonald Bryant** <maclaw51@verizon.net>                    Fri, Dec 14, 2018 at 7:53 PM
To: bcc@baruchcohenesq.com

Mr. Cohen:
I have had difficulty consulting with my client on your demand for reimbursement of over $14,000 in fees. I have forwarded your email to him and left messages but have not had the opportunity to discuss your demand with him. As we our in our holiday season, I expect he may be visiting his family outside the state. I am willing to work with you in regards to your demands but I will need to confer with my client. Until then I would request some additional time to get back to you. I might point out that the motion you filed to deem the Requests for Admissions, which were propounded and responded to over four (4) years ago, admitted might make this issue moot in the event your motion is granted as there will be no further issues in regards to the pretrial statement and therefore no need for one. On the other hand if you do not prevail, an entirely new pretrial stipulation will have to be drafted. Bryant.


-----Original Message-----
From: Baruch Cohen <baruchcohen@baruchcohenesq.com>
To: Maclaw51 <Maclaw51@verizon.net>
Sent: Sun, Dec 9, 2018 10:38 am
Subject: TABER VS COPELAND - M&C RE: BCC'S ATTORNEYS FEES RE PRETRIAL - $14,368.71 i

[Quoted text hidden]

---

**Baruch Cohen** <baruchcohen@baruchcohenesq.com>                    Sat, Dec 15, 2018 at 5:56 PM
Reply-To: bcc@baruchcohenesq.com

████████████████████████████████████████████

[Quoted text hidden]
--
[Quoted text hidden]

---

**Baruch Cohen** <baruchcohen@baruchcohenesq.com>                    Wed, Dec 19, 2018 at 1:11 AM
Reply-To: bcc@baruchcohenesq.com
To: maclaw51@verizon.net
Cc: BARUCH COHEN <bcc@baruchcohenesq.com>

████████████████████████████████████████████

Counsel:

- I'm back from NY. You've had additional 4-days, but still nothing from you.
- You don't even specify how much extra time you need.
- This is not rocket science. You asked me for my fees and I provided it to you.
- Your concerns about the pending Motion is not our problem, they are your client's problem.
- If I do not have payment of **$14,368.71** into my Wells Fargo Bank Account #: 3819001557, Routing #: 122000247 by **Friday 12-21-2018 at 12:00pm** (and email me proof of the deposit) I will be filing the motion for fees which will only increase the demand.

BCC

6/20/2019        LAW OFFICE OF BARUCH C. COHEN, APLC Mail - TABER VS COPELAND - M&C RE: BCC'S ATTORNEYS FEES RE PRETRIAL - $1...

---
Baruch C. Cohen, Esq.
Law Office of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, CA 90010
Office (323) 937-4501 | Cell (323) 353-9535
Facsimile: (323) 937-4503
Email: bcc@baruchcohenesq.com
www.BaruchCohenEsq.com
**_Notice of Ex Parte Hearings Will Not Be Accepted by Email_**
American Trial Attorneys in Defense of Israel



**2013, 2015, 2016, 2017, 2018 & 2019** *Super Lawyers®* *is a registered trademark of Thomson Reuters*
This e-mail is covered by the Electronic Communications Privacy Act 18 U.S.C. 2510-2521 and is legally privileged. It is intended only for the
use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure
under applicable law. If you are not the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited.
If you have received this communication in error, please notify us immediately by e-mail and destroy this communication.

   Sender notified by
Mailtrack

[Quoted text hidden]

---

**Macdonald Bryant** <maclaw51@verizon.net>                                    Thu, Dec 20, 2018 at 8:50 PM
To: bcc@baruchcohenesq.com

Dear Mr. Cohen: You gave my client 4 days to to wire you over $14,000 or else! You provided a bill which
appears to have a number of charges which did not result directly from any defalcation of my office or Mr.
Copeland and would have been incurred in the normal course of the proceedings. You make your demands
within days of Christmas, even filing a motion, with no consideration to my office or Mr. Copeland or his family.
In light of the number of times you have requested accommodation for your days of religious observance I
find your lack of consideration for my client's disappointing to say the least. Finally, as I am sure you are
aware, both because of Mr. Copeland's bankruptcy filing and my conversations with you, he had very little left
in terms of financial resources when he filed. What little he did have was utilized to defend himself in the
criminal proceeding instituted by Mr. Perez which delayed these proceedings for two years. Most of the costs,
however, had to be paid for by borrowing from his children. I have been trying to meet with my client regarding
your demands but have not yet been able to so. I would respectfully request more time, until next Friday the
28th to respond and hopefully resolve this issue. BCM
[Quoted text hidden]

---

**Baruch Cohen** <baruchcohen@baruchcohenesq.com>                              Thu, Dec 20, 2018 at 9:08 PM
Reply-To: bcc@baruchcohenesq.com
To: Macdonald Bryant <maclaw51@verizon.net>
Cc: BARUCH COHEN <bcc@baruchcohenesq.com>

Counsel:

Before you work yourself into a frenzy and get disappointed, next time, state up front the amount of time that
you needed to get back to me. Your request is GRANTED. **12-28-2018**.

6/20/2019        LAW OFFICE OF BARUCH C. COHEN, APLC Mail - TABER VS COPELAND - M&C RE: BCC'S ATTORNEYS FEES RE PRETRIAL - $1...

BCC

---
Baruch C. Cohen, Esq.
Law Office of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, CA 90010
Office (323) 937-4501 | Cell (323) 353-9535
Facsimile: (323) 937-4503
Email: bcc@baruchcohenesq.com
www.BaruchCohenEsq.com
***Notice of Ex Parte Hearings Will Not Be Accepted by Email***
American Trial Attorneys in Defense of Israel



**2013, 2015, 2016, 2017, 2018 & 2019** *Super Lawyers® is a registered trademark of Thomson Reuters*
This e-mail is covered by the Electronic Communications Privacy Act 18 U.S.C. 2510-2521 and is legally privileged. It is intended only for the
use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure
under applicable law. If you are not the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited.
If you have received this communication in error, please notify us immediately by e-mail and destroy this communication.


Sender notified by
Mailtrack

[Quoted text hidden]

---

**Macdonald Bryant** <maclaw51@verizon.net>                                    Fri, Dec 21, 2018 at 1:58 PM
To: bcc@baruchcohenesq.com

Thank you.
[Quoted text hidden]

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

A true and correct copy of the foregoing document entitled: **PLAINTIFF'S MOTION FOR CONTEMPT OF COURT FOR DEFENDANTS' FAILURE TO COMPLY WITH ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES [DOC-116]; DECLARATION OF BARUCH COHEN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 6/20/2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Baruch C Cohen          bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
Bryant C MacDonald      Maclaw51@verizon.net
US Trustee (RS)         ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On 6/20/2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 6/20/2019,, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Scott H. Yun, USBC, Central District of California, 3420 Twelfth Street, Suite 345, Riverside CA 92501

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 6/20/2019 | Baruch C. Cohen, Esq. | /s/ Baruch C. Cohen |
|-----------|----------------------|---------------------|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.